PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT, v. GERMAN MUTUAL FIRE INSURANCE ASSOCIATION, RESPONDENT.—105 S. W. (2d) 1001.

Kansas City Court of Appeals.   May 3, 1937.

*L. H. Cook* and *Harry A. Hall* for appellant.

*Irwin, Bushman & Buchanan* for respondent.

REYNOLDS, J.—This is a suit on a fire insurance policy. The petition was filed on September 14, 1935, in the Circuit Court of Cole County; and the cause was tried before the Honorable LIEUTELLUS CUNNINGHAM, sitting as special judge of said court, and before a jury. At the conclusion of the whole evidence, an instruction in the nature of a demurrer was granted by the court, directing a verdict for the defendant; and the verdict was thereupon returned by the jury in favor of the defendant. From a judgment duly entered on the verdict in behalf of the defendant, the plaintiff, after an unsuccessful motion for a new trial, prosecutes this appeal.

The defendant is a farmers' mutual fire insurance company, organized under Section 6056, Revised Statutes of 1929, and engaged in insuring the property of its members against loss by fire for the purpose of paying the losses incurred by any member thereof by *pro rata* assessment.

On August 10, 1926, the defendant issued its policy of insurance No. 2005 to one Mrs. Alice E. Smith, insuring among other things her certain dwelling house located in Marion township, Cole County, Missouri, in the sum of $2400. The insurance was for five years, beginning July 29, 1926, and ending July 28, 1931.

On August 21, 1926, under the heading "Mortgage Clause," the following agreement, signed by the secretary of the defendant, was attached to the policy as forming a part thereof: "Loss or damage, if any, under this policy shall be payable to Prudential Insurance Company of America as far as their interest may appear. This company agrees to give 30 days notice, before cancellation of Policy."

At the time this clause was attached to the policy, the plaintiff held the note of Mrs. Smith, the insured under the policy, for $3500, bearing interest at the rate of five per cent per annum, secured by a

mortgage or deed of trust against the property insured. Afterward, this mortgage or deed of trust was foreclosed on December 1, 1930, under power of sale; and the real estate described therein was purchased by the plaintiff at the sale and was conveyed to it upon such date by the trustee by deed under the mortgage. Subsequent to the time that the plaintiff acquired the title to said property, the dwelling house described in said mortgage and covered by the original policy of insurance herein was totally consumed by fire, during the month of January, 1931. There was evidence tending to show that the fair and reasonable value of said house at the time of said fire was $2400. Shortly after the fire, the defendant was notified by the plaintiff of the loss; and it denied liability on the ground that the foreclosure sale under the mortgage had rendered the insurance null and void. The evidence tends to show that, at the time of the fire, all insurance assessments and premiums had been fully paid and that no notice of cancellation had ever been given by the defendant either to Mrs. Smith, the original owner, or to the plaintiff.

The petition is as follows:

"Plaintiff for its cause of action states:

"That it is now and was at all the times herein mentioned a corporation duly organized according to law and duly authorized to do business in the State of Missouri. That the German Mutual Fire Insurance Association, of Lohman, Cole County, Missouri, is now and was at all the times herein mentioned engaged in insuring persons against loss or damage by fire to their property.

"Plaintiff further states that on July 29, 1929, in consideration of a certain premium paid to the defendant, the defendant did agree and did insure Alice E. Smith against loss or damage by fire to her dwelling located in Section Twenty-six (26), Township Forty-five (45), Range Fourteen (14), Cole County, Missouri, in the sum of twenty-four hundred dollars ($2400.00), for a term of five years beginning July 29, 1926, and ending July 28, 1931, and as an evidence of defendant's said agreement they issued their policy No. 2005.

"Plaintiff further states that attached to, and forming a part of, said insurance agreement was an agreement by defendant insuring plaintiff against loss or damage by fire to said property. A verified copy of said insurance agreement is herewith filed and marked Exhibit 'A'.

"Plaintiff further states that on or about January 18, 1931, and while said policy was in full force and effect a fire occurred which totally destroyed the dwelling house mentioned therein; that due notice was given to the defendant of said loss and damage and that all the terms and conditions of said policy have been duly complied with. That from the time said insurance contract was entered into, and continuously until said fire, plaintiff had an insurable interest

in said property in excess of twenty-four hundred dollars ($2400.00), and that the loss and damage to said property was in excess of twenty-four hundred dollars ($2400.00).

"Wherefore, plaintiff prays judgment for twenty-four hundred dollars ($2400.00), with interest thereon from January 18, 1931, and for costs."

The answer sets up that the defendant is a voluntary association of persons mutually insuring the property of its members, under the provisions of Section 6056, Revised Statutes of 1929, and that it is without assets of any kind or character. It admits the execution of the original policy, by which it insured Alice E. Smith against loss and damage to her dwelling located in section twenty-six, township forty-five, range fourteen, Cole County, Missouri, in the sum of $2400 for a term of five years beginning July 29, 1926. It admits the execution of the loss payable clause attached to the original policy, providing that, in case of loss or damage, the insurance thereunder should be paid to the plaintiff as its interest might appear, and admits further than in such clause it was provided that the defendant should give to the plaintiff thirty days' notice before cancellation of the policy. It admits the destruction of the insured property by fire on or about January 18, 1931. Among the defenses set up in the answer is that the loss payable clause, upon which the plaintiff sues, was *ultra vires* the powers of the defendant association and its officers, for the reason that it had no power to enter into such a contract or to enter into any contract of insurance whatever on real estate with any persons except landowners (or in exceptional cases renters) who were members of the association and that the plaintiff was neither a member of the association nor the owner (or renter) of the property insured and that it was ineligible to become a member and that such loss payable clause was merely a collaterial agreement making plaintiff an appointee of such funds as might become due Mrs. Smith under the original policy on account of any loss or damage to her insured property and that such clause expired and terminated on the foreclosure of the plaintiff's mortgage and the delivery of the trustee's deed thereunder to the plaintiff.

The reply is a general denial.

The defendant has a written constitution and by-laws, which were introduced in evidence on the trial, providing among other things that "All persons whose property is insured in this company shall be members of the same;" that "only" landowners (and in exceptional cases renters) shall be accepted as members; that policies cannot be transferred; that each member shall pay his *pro rata* share of the losses incurred; and that new members, before being admitted to membership, shall make written application for membership and be recommended by two members of the association and pay an

initiation fee. There is a further provision that property shall be assessed at its full value and so insured but that, in case of loss, only two-thirds of the sum insured shall be paid. The policy issued to Mrs. Smith provides that the insurance granted is in accordance with the constitution and by-laws.

Upon the trial, the plaintiff introduced the original policy and the mortgage or loss payable clause under which it claims and made proof of the loss of the property insured by fire and of its damages, while the defendant introduced its constitution and by-laws and other evidence.

## OPINION.

On this appeal, the question of the propriety of the action of the court below in granting a peremptory instruction in the nature of a demurrer directing a verdict for the defendant at the close of all of the evidence and in rendering judgment for the defendant is presented. The plaintiff contends that such action upon the part of the court was erroneous and that the judgment should have been for it.

1. The plaintiff contends that the loss payable or mortgage clause attached to the original policy, under which its interest in the property insured was insured, insured such interest separate and apart from the interest of Mrs. Alice E. Smith, the mortgagor therein.

It was so held by this court in Prudential Insurance Company v. German Mutual Fire Insurance Association, 228 Mo. App. 139, 60 S. W. (2d) 1008, a suit between these same parties and upon this same contract of insurance.

. It was further held in that case that the clause in question is to be considered in the same light as a union mortgage clause (under which the interests of the mortgagee are insured rather than those of the mortgagor) and that, in such respect, it is distinguished from an ordinary open mortgage clause (under which the mortgagee is regarded as an appointee only to receive the funds in case of loss).

We find no reason to depart from such holdings in this case.

2. The plaintiff insists that, by reason of the terms and provisions of said clause, it not only constitutes an independent agreement of insurance with it but it constitutes an agreement by the defendant to insure its interest in the property insured not only as a mere lien holder under the mortgage during the life of the mortgage but also its enlarged interest as owner acquired under the mortgage in the protection of its interests as mortgagee upon its foreclosure.

The clause provides that the loss or damage, if any, under the policy shall be payable to the plaintiff so far as its interest may appear and that the defendant shall give the plaintiff thirty days' notice before cancellation of the same. No limitations as to the interest insured appear therein.

It appears that, at the time that said clause was attached to the policy, the plaintiff's interest in the property was that of a mortgagee. The mortgage which it held was afterward foreclosed by the sale of the property thereunder. The plaintiff became the owner thereof by purchase at the sale and acquired the title thereto by reason of said sale and purchase and by conveyance by deed of the trustee under said mortgage upon such sale. The plaintiff was such owner at the time of the fire which destroyed the property described in the original policy covered by the insurance granted.

3. It is contended by the defendant that, inasmuch as the only interest which the plaintiff had in the property insured at the time that the loss payable clause was attached to the original policy was that of a mortgagee, therefore such clause covered only the interest of the plaintiff in said property as mortgagee during the life of the mortgage and did not extend to any enlarged interest as owner thereafter passed to the plaintiff under the mortgage upon its foreclosure.

We cannot concur in such view. There are no restrictions in said clause so limiting it. It must have been contemplated by the parties at the time such clause was attached to the original policy that the mortgage might be foreclosed on certain contingencies and that the plaintiff's interest in the property insured might be enlarged by the passage to it upon such foreclosure sale of the full title to the property as a purchaser at said sale to protect its interest as mortgagee. The nature of the plaintiff's interest as a mortgagee in the property insured was such that its interest might be changed from that of a mere mortgage holder with a lien into that of owner, upon the foreclosure of the mortgage through purchase thereof at such sale for the protection of its interests. The purpose of the clause was to protect the plaintiff in whatever interest it had at the time of any loss. A mere change in the character of interest from that of mortgagee to that of owner is not sufficient to defeat the insurance granted the mortgagee, for it must be considered that such a change or the possibility thereof was within the contemplation of the parties when the contract was made. [Bailey v. American Central Ins. Co., 13 Fed. 250; First State Savings Bank of Croswell v. National Fire Ins. Co. of Hartford, Conn., 244 Mich. 668.]

4. Considering the clause in question in the light of a union mortgage clause as distinguished from an open mortgage clause, any provision in the original policy avoiding the insurance as to the mortgagor or the original assured on account of a change in ownership or a failure to give notice to the defendant of such a change or a failure to give prompt notice of any loss or to make prompt proof thereof or matters of a like character does not operate against the plaintiff's independent insurance as mortgagee under

such clause. [Prudential Insurance Company v. German Mutual Fire Ins. Assn., *supra*.]

The characteristics of both open mortgage clauses and union mortgage clauses and the distinguishing differences between the two are aptly stated by Judge BLAND in the case last above cited (60 S. W. (2d) 1008, 1. c. 1009) as follows:

"A policy that simply provides that it shall be payable to the mortgagee as his interest may appear is called an 'open mortgage clause' . . . This clause is to be distinguished from the 'union mortgage clause.' In the latter clause it is stipulated, in substance, that in case of loss the policy is payable to the mortgagee and that his interest as payee shall not be invalidated or affected by any act or omission of the mortgagor. Where there is merely an open mortgage clause there is no privity created between the company and the mortgagee, he not being a party to the contract but merely an appointee to receive the proceeds in case of loss. His rights will be defeated by a breach of the conditions of the policy by the mortgagor. If for any reason the policy becomes void or ceases to exist as to the insured it is void and it ceases to exist as to the mortgagee. Whereas, the union mortgage clause operates as an independent contract of insurance between the mortgagee and the company upon the former's interest, which cannot be defeated by a breach of the conditions of the policy on the part of the mortgagor or solely by his act. [26 C. J., pp. 84, 85, 273, 274, 275; 2 Cooley's Briefs on Ins. (2 Ed.), pp. 1267 to 1272; 14 R. C. L., pp. 1037, 1038; Kabrich v. State Ins. Co., 48 Mo. App. 393; Bidwell v. St. Louis Floating Dock & Ins. Co., 40 Mo. 42, 46; Allen v. Fid.-Phenix Ins. Co., 221 Mo. App. 764, 285 S. W. 761, 764; Ford v. Iowa State Ins. Co., 317 Mo. 1144, 298 S. W. 741, 56 A. L. R. 842; see note 58. Am. St. Rep., pages 667 to 673.]"

5. It is insisted, however, by the defendant that the contract embodied in the clause in question is *ultra vires*, for the reason that it had no power to make it, and that it is therefore void.

It insists that its object is to render mutual assistance to its members who suffer by fire or lightning and that it has no power to insure any property except that of its members and that only those who are landowners can become members (except that renters in exceptional cases may become such); that the plaintiff was not a member nor, at the time of the execution of said clause, the owner of any real estate insured in the defendant company or of any interest therein; and that therefore the clause is *ultra vires* and void.

The defendant is organized and operates under the provisions of Section 6056, Revised Statutes of 1929, and amendatory acts, relating to farmers' mutual fire and lightning insurance companies organized in this State, for the sole purpose of mutually insuring the property of its members and of paying any loss incurred by any member

thereof by assessment. It has a constitution and by-laws which in substance provide that only landowners (and in exceptional cases renters) are to be accepted as members and that all persons whose property is insured in it shall be members. A provision is also found therein prohibiting the transfer of insurance held in it.

The statute above mentioned, together with its constitution and by-laws, comprise the charter of the defendant, from which its powers and authority are to be determined. There is no express provision found in either the statute or the constitution and by-laws prohibiting the making of a contract such as the one here in question. Neither is there any provision found in the statute or the constitution and by-laws in which there is a declaration that any contract made in excess of the powers of the defendant shall be void or from which an intention that it should be void may be said to exist.

6. The defendant contends that, by the use of the word "shall" in article 3 of the defendant's constitution wherein it is provided that "All persons whose property is insured in this company shall be members of the same" and by the use of the word "only" in sub-section (a) of section 10 of its by-laws wherein it is provided that "only landowners shall be accepted as members," such restrictions were imposed that the defendant association had no authority or power to insure the property of any one who was not a member of the defendant or to accept as a member thereof any person who was not a landowner (except that renters, in exceptional cases, might have been accepted as such) and that its act in issuing the loss payable clause in question was clearly outside the scope of the objects for which the defendant association was organized and is therefore *ultra vires* and void.

Under its charter, the defendant is a mutual organization with power to insure the property of its members; but there is no provision therein expressly forbidding insurance of others than members. The use of the words "shall" and "only" in the connections noted in the preceding paragraph of this opinion does not go to that extent. The contract in question, if not authorized by the charter of the defendant, is not forbidden by it. At the most, the making of such contract was the exercise merely of a power in excess of any granted. [Adams v. Farmers' Mut. Ins. Co., 115 Mo. App. 21, 90 S. W. 747.]

It has been held that, for acts merely in excess of charter authority, corporations cannot set up the defense of *ultra vires* when the consideration has been received and the transaction executed by the other party. [Lysaght v. St. Louis Operative Stonemasons' Assn., 55 Mo. App. 538; Cass County v. Mercantile Town Mut. Ins. Co., 188 Mo. 1, 86 S. W. 237; Adams v. Farmers' Mut Ins. Co., *supra*; Wisman v. Hazel Dell Farmers' Mut. Fire & Lightning Ins. Co. (Mo. App.), 94 S. W. (2d) 908.]

Not only so; but it has been further held that, in a collateral

proceeding wherein it is sought to have the *ultra vires* act of a trading corporation held void, it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain lines, but in addition to declare that, when it exceeds the restrictions, the act shall be void. [City of Goodland v. Bank of Darlington, 74 Mo. App. 365.]

The case of Cass County v. Mercantile Town Mutual Insurance Company, *supra,* is a case in many respects involving the same or similar questions as are involved herein. In that case, the defendant was a town mutual fire insurance company organized under the statute relating to town mutual fire insurance companies organized for the sole purpose of mutually insuring the property of its members and of paying any loss incurred by any member thereof by assessment.

The statute controlling in the Cass County case is practically the same as Section 6056 (under which the defendant in the instant case is organized), except that it relates to town mutual companies instead of to farm mutual companies. The suit therein was on a contract of reinsurance issued by the defendant, Mercantile Town Mutual Insurance Company, to the State Town Mutual Fire Insurance Company of Nevada, Missouri, under which a loss occurred. The defense was that such contract was *ultra vires.* In disposing of such defense, the court said, at pages 13 and 14 of 188 Mo.:

''Defendant, however, claims that the contract of reinsurance is *ultra vires,* for the reason that defendant had no power to make it, and that the State Town Mutual had no power to enter into such contract, because it is expressly prohibited from transacting such business. But we are unable to agree to this contention for the reason, as we have said, there is no express provision in the statute prohibiting such companies from reinsuring property which has already been insured by the other. At most the prohibition is only by implication, and as the contract between the companies was executed to the fullest extent on the part of the Nevada company, and the policy issued to it by defendant in consideration thereof, the defense of *ultra vires* is not open to defendant in this case. It is well settled in this State that the defense of *ultra vires* is not open to a corporation when the contract has been fully executed on the part of the other contracting party, and it is not expressly prohibited by law. [Drug Co. v. Robinson, 81 Mo. 18; Dairy Co. v. Mooney, 41 Mo. App. 665; Welsh v. Brewing Co., 47 Mo. App. 608; Winscott v. Investment Co., 63 Mo. App. 367; Glass v. Brewing Co., 47 Mo. App. 641; Grohmann v. Brown, 68 Mo. App. 630; City of Goodland v. Bank, 74 Mo. App. 365.]''

In the instant case, there is nothing in the charter of the defendant company to show that it was intended that, in the event of an

act in excess of its jurisdiction by its managing officers, such act should be void. It is not so declared therein.

In the statute under which the defendant in the instant case was organized, the word "sole" where used in connection with the purpose for which the organization was formed, while denoting a restriction, should not be so rigidly contrued as to prohibit the defendant or its managing officers from the issuance of a contract of insurance to one holding a mortgage upon the lands of a member whose property is insured, which tends to facilitate and promote its object rather than to retard or violate it. [Cass County v. Mercantile Town Mutual Ins. Co., *supra*.]

The object of the defendant is by its constitution declared to be the mutual insurance of the property of its members.

In this day when mortgages upon farm properties are the rule, it is inconceivable that any organization whose object is the mutual insurance of the farm properties of its members can effectively promote such object or purpose without the power to issue contracts of the character involved herein. Contracts of this character are not only within the sphere of the insurance business (such as the business in which the defendant is engaged) but are universally recognized to be so incidental thereto as to become a necessary part thereof. The defendant itself recognizes such fact, for it has been its uniform practice to issue such contracts. For the defendant to refuse to issue such a contract would be to defeat its very object, in that a refusal of such a nature would ordinarily result in the denial of insurance to any member with an existing mortgage on such member's property.

The contract in this case is justified upon the plainest business principles. It was not contrary to any law. Neither was it forbidden by the defendant's charter. In what way could the defendant have continued the insurance of Mrs. Smith in force had it refused to issue the contract in question to the plaintiff?

7. In this case, the original policy was issued to the mortgagor on August 10, 1926. The loss payable clause in question was issued and attached as forming a part thereof on August 21, 1926. The dwelling house insured thereunder was destroyed by fire on January 18, 1931.

The defendant by its answer admits the issuance of the original policy to the mortgagor, Mrs. Smith, and also the issuance of the loss payable clause to the plaintiff and admits that said clause was attached to the original policy as forming a part thereof. It is not denied that full consideration for the original policy had moved from Mrs. Smith to it or that she had made prompt payment of all assessments made against her under the same. It is only denied that any consideration moved to the defendant from the plaintiff for the loss payable clause and the insurance claimed under the loss

payable clause. However, the consideration for the original policy moving from the mortgagor, Mrs. Smith, was the consideration for the mortgage clause attached, under which the plaintiff claims, even though said clause was not attached to the original policy at the time such original policy was issued but was attached afterward. [Wisman v. Hazel Dell Farmers' Mut. Fire & Lightning Ins. Co., *supra.*] After the mortgage clause was attached to the policy for the mortgagee's benefit, there was nothing for the mortgagee to do. It fully relied upon the defendant to perform its part of the agreement. Although the secretary of the defendant company may have been without authority to issue the clause in question, the defendant is estopped from denying his authority for the reason that it accepted and retained the benefits or the assessments. [Adams v. Farmers' Mut. Ins. Co., *supra*; Cass County v. Mercantile Town Mut. Ins. Co., *supra*; Wisman v. Hazel Dell Farmers' Mut. Fire & Lightning Ins. Co., *supra.*]

8. The defendant contends, however, that the mortgage clause in question is in no sense for its benefit, but is solely for the benefit of others; that, the plaintiff not having paid anything for it and the mortgagor (Mrs. Smith) not having paid anything more for the original policy with the mortgage clause attached than she would have paid without the mortgage clause attached, there was no consideration moving to it from any source for such clause; and that, by reason of all such, it is not within the rule that the defense of *ultra vires* is not open to a corporation which has received the benefits of a contract executed by another.

In such contention, however, it overlooks the fact that there was a legal consideration for the support of the contract of the clause in question. The consideration for the original policy was also the consideration for it, even though it was not attached to the original policy at the time that the original policy was issued and was not attached until some days afterward. [Wisman v. Hazel Dell Farmers' Mut. Fire & Lightning Ins. Co., *supra.*] The defendant having received and retained such consideration and the contract having been performed by the other parties thereto, it is brought within the rule above announced; and the defense of *ultra vires* is unavailable. [Adams v. Farmers' Mut. Ins. Co., *supra*; Cass County v. Mercantile Town Mut. Ins. Co., *supra.*]

The cases cited by the defendant in its brief in support of its contention are not in point.

9. It is true, as contended by the defendant, at least as a general rule, that estoppel must be pleaded; but it is not true where the facts showing the estoppel appear in the case made by the party against whom the estoppel is invoked. [Ornellas v. Moynihan (Mo. App.), 16 S. W. (2d) 1007; Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S. W. 359; Adams v. Farmers' Mut. Ins.

Co., *supra*; Cass County v. Mercantile Town Mutual Ins. Co., *supra*.] The facts in evidence showing the estoppel of the defendant to plead *ultra vires* appear in the case made by the defendant. It was therefore unnecessary for the plaintiff in the reply to have pleaded estoppel.

It is further contended by the defendant that the plea of estoppel is not available to the plaintiff in this case as a bar to the defendant's defense of *ultra vires* because of the fact that it is charged with notice of the provisions of the *constitution* and by-laws of the defendant and the limitation upon the defendant's powers to issue to it the mortgage clause in question and that, having accepted such mortgage clause with full knowledge that no power existed in the defendant or its officers to issue such clause and to make such contract with it, it cannot recover herein.

However, such contention is answered by what has already been said herein to the effect that, even though such contract be *ultra vires* in the sense that the defendant exceeded its authority in making such contract and in issuing such clause, yet it is not void for there are no provisions in the defendant's charter from which it can be determined that it was the intention that it should be void. The defendant was not prohibited from making such contract by anything found in its charter. The defendant having issued such contract and received the benefits thereof and the contract having been fully executed by the plaintiff, the defendant cannot now assert the *ultra vires* character of such contract or contend that it was void, even though the plaintiff may have had knowledge that the making of such contract was in excess of the powers of the defendant at the time that it was made, if it be true that it was in excess of such powers.

10. The defendant's further contention that estoppel is not available to the plaintiff for the reason that the defendant received no benefit whatever from the issuance of the clause in question has been disposed of by what has been said with reference to the consideration for the original policy being also the consideration for said clause and the full execution of such contract by the plaintiff. In any view of the case, the defendant is fully cut out on the record from the defense of *ultra vires*.

11. The clause in the defendant's constitution and by-laws by which the transfer of a policy is prohibited clearly refers to a transfer by the insured to whom the original policy was issued. The loss payable clause attached to the policy was neither a transfer of the policy nor an assignment of it. It was an independent contract with the plaintiff by which the defendant separately insured the interests of the plaintiff in the property insured under the original policy. While based upon the original policy for the purpose of

identifying the property insured, it formed no part of the contract under such policy with the mortgagor or the insured owner therein.

The giving of the peremptory instruction by the trial court was erroneous. The plaintiff made a submissible case under the law and was entitled to have it submitted to the jury and its damages assessed.

The judgment is reversed, and the cause is remanded for further proceedings therein not inconsistent with the views herein expressed. All concur.