**COUNTRYWIDE HOME LOANS,**
Respondent,

v.

**ALLSTATE INSURANCE COMPANY,**
et al., Appellant,

**Robert C. Washington, Appellant.**

**Nos. WD 66026, WD 66152.**

Missouri Court of Appeals,
Western District.

Dec. 26, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 2008.

Timothy J. Mudd, Kansas City, for All-state Insurance Company.

Charles S. Pulliam, III, Chesterfield, for Respondent.

Carl W. Bussey, Kansas City, for Robert C. Washington.

Before BRECKENRIDGE [1], P.J., LOWENSTEIN and SPINDEN, JJ.

### HAROLD L. LOWENSTEIN, Judge.

The sole legal issue in this bench tried case is whether a union mortgage clause entitles the mortgagee/lender to insurance proceeds where the insured loss occurred prior to a foreclosure sale at which the mortgagee/lender purchased the property for the full amount of the secured indebtedness.

Allstate Insurance Company ("Allstate") and Robert C. Washington appeal the judgment entered after a bench trial on stipulated facts in favor of Countrywide Home Loans ("Countrywide") on a dispute about fire insurance proceeds. Appellants contend the trial court erroneously applied the law in finding that Countrywide had an independent contract with Allstate and was therefore entitled to insurance proceeds resulting from a fire that occurred before Countrywide foreclosed on property.

Washington owned a home in Ruskin Heights secured by a deed of trust. The respondent, Countrywide, was eventually assigned the deed of trust and became the mortgagee on the property. The property was covered by a fire insurance policy from Allstate. On January 30, 2002, the Washington property was damaged by fire. Washington made a claim for insurance proceeds to Allstate. The total insurable interest was $105,280.

On February 19, 2002, Washington notified Countywide of the loss. On April 3, 2002, Countrywide foreclosed on the Washington property and purchased the property at the foreclosure sale for the total indebtedness of $53,793.72. Countrywide notified Allstate of the change in ownership of the property.

On April 10, 2002, Allstate issued two checks on the fire insurance policy. Washington had faxed over a copy of a forged cashier's check representing to Allstate that he had paid down the mortgage to $8,730.33. Allstate issued one check for $8,730.33 made payable to Countrywide and Washington. Allstate issued a second check for $96,549.67 to Washington; Countywide was not a payee on the second check. Washington forged Allstate's signature on the first check and cashed both checks. In May 2002, Countrywide then began demanding that Allstate pay the full amount of the policy proceeds to Countrywide. When Allstate indicated that it had already paid out on the policy, Countrywide brought suit against Allstate and Washington for breach of contract, fraud, and tortious interference of contract. Allstate filed a cross-claim against Washington for fraudulent misrepresentation.

---

1. Breckenridge, J., was a member of this court at the time the case was argued and submitted. She was subsequently appointed a judge of the Supreme Court of Missouri but has been reassigned to this court as a special judge for the purpose of disposition of this case.

The trial court decided the case as a matter of law based on stipulated facts. Relying on *Travers v. Universal Fire & Casualty Insurance Co.*, 34 S.W.3d 156 (Mo.App. W.D.2000), the trial court entered judgment in favor of Countrywide. Both Allstate and Washington appeal.

## Discussion

This court reviews a court-tried civil case under the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 573 (Mo.App. W.D.2005). Thus, this court will affirm the trial court's judgment unless it is not supported by the evidence, it is against the weight of the evidence, or the trial court has erroneously declared or applied the law. *Murphy*, 536 S.W.2d at 32.

Appellants' single point contends that the trial court erroneously applied the law in holding that Countrywide had any insurable interest in the property, arguing that Countrywide's interest as a mortgagee was extinguished when it purchased the property for the full amount of indebtedness at the foreclosure sale, at which time, the appellants argue, the debtor-creditor relationship was extinguished. The provision in the deed of trust and the fire insurance policy under which Countrywide makes its claim to the insurance proceeds was only intended to protect the mortgagee's interest. When that interest is extinguished, they contend, the mortgagee no longer has any right to the proceeds of an insurance policy paying for damage incurred <u>prior</u> to the foreclosure sale.

Appellants distinguish *Travers* factually. In *Travers*, the fire damage occurred *after* the foreclosure sale. 34 S.W.3d at 159. The trial court found that the mortgage clause created an independent contract of insurance between the mortgagee and the insurance company, evidently in contemplation that the property could be foreclosed and the mortgagee's interest would convert to that of an owner. *Id.* at 164.

The damage in *Travers* occurred <u>after</u> the property was purchased by the mortgagee at the foreclosure sale. In this case, and a line of Eastern and Southern District cases, where the damage occurred <u>before</u> the foreclosure, Missouri courts have held that the purchase of the property for the full amount of indebtedness extinguishes the mortgagee's interest. *See Economy Preferred Ins. v. Schomaker*, 900 S.W.2d 249 (Mo.App.1995), *Fire Ins. Exch. v. Bowers*, 994 S.W.2d 110 (Mo.App.1999), *Black v. Adrian*, 80 S.W.3d 909 (Mo.App. 2002). Since the indebtedness has been satisfied by the security, there is no outstanding interest to protect.

A further question is raised: Does the presence of a union mortgage clause in a contract of insurance trump the legal effect of a subsequent foreclosure where the debt was satisfied by the bid of the mortgagee for the total unpaid debt plus costs? The Allstate policy covering the Washington property is, indeed, a "union" clause that states:

> it will protect the mortgagee's interest in a covered building structure in the event of an increase in hazard, intentional or criminal acts of, or directed by, an insured person, failure by any insured person to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions.

There are cases that give credence to the right to insurance proceeds by the mortgagee because of these clauses. *See e.g., Reliance Ins. Co. of Pa. v. Cmty. Fed. Sav. & Loan Ass'n*, 440 S.W.2d 929, 930–31 (Mo.1969); *Prudential Ins. Co. of Am. v. German Mut. Fire Ins. Ass'n of Lohman*, 231 Mo.App. 699, 105 S.W.2d 1001,1005

(1937); *Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156, 163 (Mo.App. 2000). However, none of the above cases allowing insurance proceeds to go to the mortgagor are based on facts where the loss occurred prior to a foreclosure sale based on a bid for the debt.

Allstate does not cite, nor upon review could this court identify, any cases from this state or any other state where the presence of a union clause prevailed on the issue of insurance proceeds where the loss occurred before the foreclosure.

Indeed, in *Northwestern National Insurance Co. v. Mildenberger*, 359 S.W.2d 380, 381–82 (Mo.App.1962), where the sequence of events was the same as the case at bar, the Eastern District of this court said, in no uncertain terms, that the mortgagee's purchase at foreclosure for the full amount of the balance of the debt plus costs of sale did not preserve a claim for the insurance proceeds, even where the insurance policy contained a union clause. *Id.* at 385. The opinion noted that the expanded benefits to a mortgagee to insurance benefits arising from a union clause went only "up to the amount of the debt secured." *Id.* at 383. Quoting from *Swihart v. Missouri Farmers Mutual Tornado, Cyclone & Windstorm Insurance Co.*, 234 Mo.App. 998, 138 S.W.2d 9 (1940), the court stated that a union contract was an independent contract for the benefit of the mortgagee for the limited purpose of keeping the mortgagor from defeating the rights of the mortgagee vis-à-vis the insurance company. *Northwestern*, 359 S.W.2d. at 384. When the foreclosure sale took place the mortgagee became the owner of the property. But, once the mortgagee's security for the deed of trust was enforced by foreclosure, any interest on insurance proceeds extended only to the extent of the outstanding debt plus expenses. *Id.* Had the sale brought less than the out-

standing debt, and allowed expenses, the mortgagee could have proceeded against the debtor or against the available insurance. *Id.* "In no event was [mortgagee] to collect more than the balance due on the note regardless of the source," and it could "not seriously be contended that the mortgagee could have kept the insurance proceeds and also have recovered in full the payment of the debt owed to it." *Id.* at 385. The *Northwestern* opinion interpreted the following language of the union clause, "as its interest may appear," as referring to the amount of the debt owed and not to the mortgagee's interest in the property. *Id.* at 386.

The controlling factor is the relative timing of the loss and the foreclosure. The secured creditor's rights were fixed at the time of the pre-foreclosure loss. It could have pursued the debt, the insurance proceeds, or deficiency against the debtor. The union clause, under these facts, did not require a different result. Also a non-factor in this case is the chicanery of Washington.

The interpretation urged by Countrywide, to permit the mortgagee—now the foreclosure sale owner—to collect insurance proceeds arising from pre-foreclosure damage, is contrary to the holding in *Northwestern* and would result in a windfall for secured real estate creditors—creditors having already satisfied their debt by obtaining the real property for the amount of the debt owed them. *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.*, 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694, 696 (N.Y.1971); *Rodriguez v. First Union Nat'l Bank*, 61 Mass.App.Ct. 438, 810 N.E.2d 1282, 1286–87 (2004).

The remaining claims of Countrywide and the Allstate cross-claim against Washington are made moot by this decision. The judgment in favor of respondent Countrywide is reversed because of an er-

ror of law and is remanded for the sole purpose of entering judgment for defendants Allstate and Washington on Countrywide's claims for breach of contract, fraud, and tortious interference with contract.

All concur.